**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
J.F. KIELY CONSTRUCTION CO.,  :   CIVIL ACTION NO. 10-4871 (MLC)
                              :
      Petitioner,             :   MEMORANDUM OPINION
                              :
      v.                      :
                              :
UTILITY WORKERS UNION OF      :
AMERICA, AFL-CIO, LOCAL 409,  :
                              :
      Respondent.             :
_____:
```

**COOPER, District Judge**

Petitioner, J.F. Kiely Construction Co. ("petitioner"), filed a petition requesting that this Court vacate the arbitration award issued in <u>J.F. Kiely Constr. Co. v. Util. Workers of Am. Local 409</u>, No. 09-0702, June 22, 2010 (Restaino, Arb.). (Dkt. entry no. 1, Pet. To Vacate; dkt. entry no 2, Ex. C, Restaino Op.) Petitioner also moves for an order vacating the arbitration award. (Dkt. entry no. 2, Mot. to Vacate.) Respondent, Utility Workers Union of America, AFL-CIO, Local 409 ("Union") opposes the motion. (Dkt. entry no. 8, Opp'n Br.) The Court determines the motion on the briefs without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). The Court, for the reasons stated herein, will deny the motion to vacate.

### BACKGROUND

Petitioner is a New Jersey corporation. (Pet. To Vacate at 2.) Respondent Union is a labor organization. (Dkt. entry no. 8, Opp'n Ans. at 2.) On March 26, 2005, the parties entered into

a collective bargaining agreement ("CBA") for a five-year term. (Restaino Op. at 1; dkt. entry no. 2, Ex. A, CBA.)  Keith Kirsch ("Kirsch") has been an employee of petitioner since 1993 and is a member of the Union.  (Restaino Op. at 1, 4.)

On November 19, 2009, Kirsch was working as a Foreman on a job site when he was approached by a Supervisor.  (Id. at 4, 6.) The Supervisor testified that he thought he detected the presence of alcohol on Kirsch.  (Id.)  Upon inspecting Kirsch's truck, the Supervisor found a cooler containing six to eight unopened beers. (Id.)  The Supervisor consulted the Health and Safety Director, who said possession of alcohol in a company vehicle was automatic grounds for termination.  (Id. at 5)

The Supervisor returned to the job site with a Risk Manager to administer a "reasonable cause analysis," but Kirsch was gone; Kirsch later testified that he left for a doctor's appointment. (Id.)  After an investigation, petitioner determined Kirsch had possessed alcohol on a job site, in a company truck, while doing company work.  (Id.)  At a  subsequent "first step grievance meeting" petitioner terminated Kirsch's employment, rather than giving him a second chance.  (Id. at 5-6.)

Petitioner based its decision on the "Alcohol Policy," which is part of petitioner's Health and Safety Plan and states: "[t]he purchasing, carrying or consumption of all alcoholic beverages while on the job, in any Company vehicle, or on Company property is strictly prohibited.  Any violation of this rule will be

considered just cause for discharge." (Id. at 3-4.) However,
another paragraph in the Health and Safety Plan ("Drug and
Alcohol Policy") states:

> Possessing, distributing, transferring, purchasing, selling,
> using or being under the influence of alcoholic beverages or
> illegal drugs while on our property, while attending
> business-related activities, while on duty, or while
> operating a vehicle or piece of equipment will be subject to
> a reasonable case drug/alcohol test and can result in
> disciplinary action, including suspension without pay or
> possible termination.

(Id. at 4.)

Kirsch brought a timely grievance, which was processed and
then referred to arbitration in accordance with the CBA.
(Restaino Op. at 1; CBA at 29.) Arbitrator Restaino ("the
Arbitrator") conducted a hearing on May 12, 2010. (Restaino Op.
at 1) The Arbitrator decided in favor of the Union, in part,
concluding that petitioner had "breached its discretionary
authority and set forth an extreme penalty not supported by the
facts in evidence." (Id. at 10-12.) The Arbitrator ordered
petitioner to reinstate Kirsch, but without back pay and pursuant
to a "Last Chance Agreement" whereby Kirsch would be subject to
termination if he violates any of petitioner's drug or alcohol
policies. (Id.) Petitioner now moves to vacate the arbitration
award. (Mot. To Vacate.)

## DISCUSSION

### I.  Legal Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. § ("Section")
1, et seq., permits a district court to vacate an arbitration

award upon application by either party if (1) it was procured by corruption, fraud, or undue means, (2) there was "evident partiality or corruption" with respect to the arbitrator, (3) the arbitrator committed misconduct by refusing to postpone the hearing, refusing to hear pertinent and material evidence, or otherwise committing misbehavior that prejudiced the rights of a party, or (4) the arbitrator exceeded his or her powers or failed to reach "a mutual, final, and definite award."  9 U.S.C. § 10(a).  The FAA, however "was enacted to foster the public policy favoring arbitration and to give effect to parties' contractual agreements to arbitrate."  Jeereddi A. Prasad, M.D., Inc. v. Investors Assocs., Inc., 82 F.Supp.2d 365, 368 (D.N.J. 2000). "When the parties include an arbitration clause in their [CBA], they choose to have disputes concerning constructions of the contract resolved by an arbitrator."  Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem., & Energy Workers Int'l Union Local 2-991, 385 F.3d 809, 815 (3d Cir. 2004).

A district court, thus, has very limited authority to vacate an arbitration award, and cannot overrule an arbitrator simply because the court disagrees with the arbitrator's construction of the contract at issue.  United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995); see also Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003) (stating that a district court may vacate an arbitration award "only under exceedingly narrow circumstances").  An arbitration award must be

enforced as long as the arbitrator arguably construed or applied the contract, and even if the arbitrator has committed a serious error.  <u>Suburban Transit</u>, 51 F.3d at 379.  A district court may not correct legal or factual errors made by an arbitrator. <u>Brentwood Med. Assocs. v. United Mine Workers of Am.</u>, 396 F.3d 237, 240 (3d Cir. 2005); <u>see also</u> <u>News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103</u>, 918 F.2d 21, 24 (3d Cir. 1990).  "Accordingly, the award stands 'even if the court finds the basis for it to be ambiguous or disagrees with its conclusions under the law.'" <u>Citgo</u>, 385 F.3d at 816 (citing <u>Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters</u>, 969 F.2d 1436, 1441 (3d. Cir. 1992)).  "[T]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." <u>Id.</u> (quotation and citation omitted).

An arbitration award based on construction of a CBA cannot be vacated if the award "draws its essence" from the CBA.  <u>United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.</u>, 484 U.S. 29, 36 (1987); <u>Eichleay Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers</u>, 944 F.2d 1047, 1056 (3d Cir. 1991) (noting that an award can be vacated only if it does not draw its essence from the CBA at issue).  An arbitration award "draws its essence" from a CBA if the arbitrator's interpretation "can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties'

intention." <u>Brentwood Med. Assocs.</u>, 396 F.3d at 241 (quotation and citation omitted)(emphasis omitted); <u>see</u> <u>Suburban Transit</u>, 51 F.3d at 379-80.  Thus, a district court can only disrupt an arbitrator's award if the arbitrator acted with manifest disregard for the law, or the record before the arbitrator reveals absolutely no support for the arbitrator's determination. <u>Id.</u> at 380; <u>see also</u> <u>Brentwood Med. Assocs.</u>, 396 F.3d at 241.

## II.  Legal Standards Applied Here

### A.   The Parties' Contentions

Petitioner contends the arbitration award should be vacated because it (1) does not draw its essence from the CBA, and (2) is contrary to public policy.  (Mot. To Vacate at 2.)  Petitioner argues that the Arbitrator erred in not giving effect to the just cause provision in the written and signed Alcohol Policy.  (<u>Id.</u> at 4.)  Petitioner argues that the Arbitrator instead grafted a new term onto the parties' agreement.  (<u>Id.</u> at 6.)  Petitioner also contends that giving Kirsch a second chance would violate the public policy of "ensuring that individuals who are licensed to operate commercial motor vehicles . . . do so in a manner that minimizes the potential for accidents, injury and property damage," and of "protecting people and the environment from the risks inherent in the movement of hazardous materials by pipeline and other modes of transportation."  (<u>Id.</u> at 10 (citing Federal Motor Carrier Safety Administration and Pipeline & Hazardous Materials Safety Administration guidelines).)

6

The Union opposes the motion, in light of the Court's narrow scope of judicial review.  (Opp'n Br. at 5-8.)  The Union argues that there are two different policies pertaining to alcohol, they are in tension, and the Arbitrator merely construed them.  (Id. at 11-14.)  Moreover, the Union contends that the Alcohol Policy is not part of the CBA, and thus the Arbitrator was free to construe it and other policies.  (Id. at 14-15.)  Thus, the Union asserts, the arbitration award drew its essence from the CBA. (Id. at 17.)  Furthermore, the Union argues that the Arbitrator's finding was not contrary to public policy because nothing cited in petitioner's arguments requires the prohibition of mere possession of alcohol.  (Id. at 20-28.)

**B.   The Arbitrator Did Not Exceed Authority Under The CBA**

The CBA gives management certain prerogatives.  In section 1, the CBA states "[t]he management and the conduct of the business of the Employer and the direction of its personnel are the exclusive responsibilities of the Employer. . . . the Employer shall have the exclusive right, subject to the terms of this Agreement . . . to discipline or discharge [employees] for cause." (CBA at 5.)  But the CBA does not define cause, nor does it state how additional rules, such as the Health and Safety Plan, shall be promulgated or construed by an arbitrator.  (See CBA.)  The Health and Safety Plan, which Kirsch signed on February 9, 2007, contains two references to alcohol use or possession.  (Restaino Op. at 4.)  The Drug and Alcohol Policy states that:

7

> Possessing . . . alcoholic beverages or illegal drugs while on our property, while attending business-related activities, while on duty, or while operating a vehicle or piece of equipment will be subject to a reasonable cause drug/alcohol test and can result in disciplinary action, including suspension without pay or possible termination.

(Id. at 4.)  The Alcohol Policy is less forgiving: the "carrying . . . of all alcoholic beverages while on the job, in any Company vehicle, or on Company property is strictly prohibited.  Any violation of this rule will be considered just cause for discharge."  (Id. at 3-4.)[1]

The Court finds that the Arbitrator's decision draws its essence from the CBA.  While the CBA permits management to discharge employees for cause, it grants the Arbitrator the jurisdiction and authority to "review and [make a] determination [on] the specific grievance submitted for arbitration," as well as to "interpret, apply, or determine compliance with the provisions of this Agreement, and to render a decision or reward with respect thereto."  (CBA at 5, 30.)  The scope is limited though, in that an arbitrator "shall not have jurisdiction to add to, subtract from, modify, or alter, in any way, the terms of such Agreement."  (Id. at 30.)  Here, the Arbitrator was to determine whether Kirsch was discharged for "just cause."  (Restaino Op. at 1.)  The Arbitrator thus considered the CBA and the two policies applicable to alcohol possession to determine whether there had

_____

[1] The Court was not provided with the entire Health and Safety Plan, only these two undated policies.

8

been just cause.  (Id. at 10.)  See N. Phila. Health Sys. v.
Dist. 1199C, No. 02-194, 2002 WL 32341951, at *3 (E.D. Pa. Oct.
24, 2002) (citing Suburban Transit, 51 F.3d at 380-81).

The Arbitrator stated that his determination rested on "the
credibility and veracity of Mr. Kirsch" and that he found Kirsch
to be "a frank, straight-forward individual."  (Restaino Op. at
11.)  Kirsch's participation in a 12-step program told him that
"Mr. Kirsch really should be brought back to work."  (Id.)
Moreover, the Arbitrator indicated that because those with drug
problems receive second chances, and because the same policy
indicated those found with alcohol would receive it too, the Drug
and Alcohol Policy should apply to Kirsch, rather than the Alcohol
Policy.  (Id.)  Even if the Court disagreed with or found legal
error in this analysis, the Court must affirm the Arbitrator's
decision, because the Arbitrator construed the various alcohol
policies petitioner maintained, in light of the CBA that refers
to none of them.  See Suburban Transit, 51 F.3d at 380-81.

The cases petitioner cites in support of its argument that
the Alcohol Policy is binding on the parties, and thus also on
the Arbitrator, are distinguishable.[2]  An examination of the CBA
here reveals that there are no limitations on interpreting

_____

[2] Petitioner claims in its Reply Brief that it previously
briefed the issue of whether the Alcohol Policy was part of the
CBA and that the Union failed to cite any law to the contrary in
response, but the Court finds no such argument in the Motion To
Vacate.  (See dkt. entry no. 13, Reply Br. at 7; Mot. To Vacate.)

supplemental provisions, of the kind present in Merck & Co., Inc. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union, Local 2-86, 246 Fed.Appx. 97, 98 (3d Cir. 2007) (where court noted the CBA provided that "the arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement or any agreements made supplementary hereto"). In Merck, the supplemental provision also explicitly stated that its violation would result in "immediate termination," and the terminated employee had intentionally committed the act that led to his dismissal. Here, the Arbitrator found credible Kirsch's testimony that he inadvertently left the beer in his truck.

Unlike in Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 610 (4th Cir. 1996), moreover, it is not clear that the CBA here "reserves to management the right to make and enforce disciplinary rules" separate and apart from the CBA.[3] Rather, section 1 of the CBA states that management may, "subject to the terms of this Agreement . . . discipline or discharge [employees] for cause." (CBA at 5.) But the CBA does not define cause or address how it might be defined. See Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1295-96 (3d

---

[3] Additionally, not all Circuits are in agreement with the Mountaineer decision on this issue. See, e.g., Local No. 7 United Food & Commercial Workers Int'l Union v. King Soopers, Inc., 222 F.3d 1223, 1228 n.2 (10th Cir. 2000); Toledo Blank, Inc. v. Teamsters Local 20, 227 F.Supp.2d 761, 774 (N.D. Ohio 2002) (discussing that the Second, Sixth, Eight, and Eleventh Circuits differ from the Fourth Circuit in Mountaineer).

Cir. 1996) (discussing <u>Super Tire Eng'g Co. v. Teamsters Local Union No. 676</u>, 721 F.2d 121 (3d Cir. 1983) <u>and</u> <u>Arco-Polymers, Inc. v. Local 8-74</u>, 671 F.2d 752 (3d Cir. 1982)).  Where parties have left terms vague, they have bargained for the arbitrator's judgment in interpreting them.  <u>Citgo</u>, 385 F.3d at 851.

It was thus reasonable for the Arbitrator to look to the CBA itself, and then to the terms of the associated policies, one of which specifically provided a second chance for a possession of alcohol violation.  Because the Court does not reverse an Arbitrator's decision for a mistake of law in any case, <u>see</u> <u>Misco</u>, 484 U.S. at 36, <u>Citgo</u>, 385 F.3d at 815, accordingly, the Arbitrator's conclusion that Kirsch's dismissal was not for just cause can be rationally derived from the CBA, as well as from the context of the two policies.  <u>See</u> <u>Suburban Transit</u>, 51 F.3d at 380.[4]  Therefore, the Court finds that the arbitration award drew its essence from the CBA and is supported by the record.  <u>See</u> <u>id.</u>; <u>Eichleay Corp</u>, 944 F.2d at 1056.

## C.   The Arbitrator's Award Does Not Contravene Public Policy

The Court may overturn the Arbitrator's decision if it is contrary to public policy.  <u>See</u> <u>Misco</u>, 484 U.S. at 42 (holding

---

[4]   "We offer no opinion as to whether the arbitrator was correct in interpreting the contractual term, because we are not required to do so.  A court need only determine that the arbitrator's decision 'can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.'"  <u>Chamberlain Mfg. Co. v. Local Lodge No. 847</u>, 474 F.Supp.2d 682, 689 (M.D. Pa. 2007).

11

that "[a] court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in common law, that a court may refuse to enforce contracts that violate law or public policy."). That policy must, however, be "well defined and dominant." W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers, 461 U.S. 757, 766 (1983). Public policy concerns cannot be expressed as general statements of public interest, but must be able to "be ascertained from law and legal precedent." Stroehmann, 969 F.2d at 1441; see also Suburban Transit, 51 F.3d at 381.

There is certainly a public policy inherent in preventing those under the influence of drugs or alcohol from working on dangerous construction sites. However, Kirsch was terminated for possession, not use. (Restaino Op. at 6.) While some of the regulations cited by petitioner include prohibitions on possession, the danger to be avoided is an impaired person on the job. But Kirsch did not test positive for having alcohol in his system. (Id. at 10.) Moreover, the Alcohol Policy was promulgated pursuant to "the recommendation of an arbitrator," not based upon a specific legal mandate. (Id. at 3.) Finally, the Arbitrator found Kirsch's explanation credible. (Id. at 11.) Because the question is whether reinstatement of this employee would violate public policy, the Arbitrator's decision to permit

12

Kirsch to return to work under a Last Chance Agreement does not violate public policy.  See Suburban Transit, 51 F.3d at 382; Pepsi-Cola Albany Bottling Co., v. Int'l Bhd. of Teamsters, Local 669, No. 96-1986, 1998 WL 315092, at *3-5 (S.D.N.Y. June 10, 1998).

None of the other grounds for vacating an arbitration award set forth in Section 10 of the FAA apply here.  Petitioner does not allege that any fraud or corruption occurred in connection with the arbitration proceedings, the Arbitrator was biased, or the Arbitrator committed misconduct that caused prejudice.  (See Mot. To Vacate; Reply Br.)  See 9 U.S.C. § 10(a).

### CONCLUSION

The Court, for the reasons stated supra, will deny petitioner's motion to vacate the arbitration award.  The Court will issue an appropriate order and judgment.


     s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: January 3, 2011

13